UNITED STATES of America,
Plaintiff,

v.

INTERNATIONAL BUSINESS MA-
CHINES CORPORATION,
Defendant.

No. 69 Civ. 200 (DNE).

United States District Court,
S. D. New York.

Dec. 4, 1975.

Baker & McKenzie, New York City, for Frederic G. Withington.

Dept. of Justice, Antitrust Div., Washington, D. C., for plaintiff.

Cravath, Swaine & Moore, New York City, for defendant IBM.

## MEMORANDUM

EDELSTEIN, Chief Judge:

Frederic G. Withington, a non-party to this antitrust action between the United States and International Business Machines Corporation (hereinafter IBM) has moved this court "for an Order, pursuant to Rule 45 of the Federal Rules of Civil Procedure and Section 2304 of the Civil Practice Law and Rules of the State of New York,"[1]

1. Explaining that Fed.R.Civ.P. 45 "is not absolutely clear with respect to the Court's power to quash a civil subpoena requiring testimony only," Memorandum of Law in Support of Motion to Quash and Vacate Subpoena at 3, n. 1, Mr. Withington cites section 2304 of the Civil Practice Law and Rules of the State of New York as support for the procedure he has employed in this motion. As authority for this reference to New York law, movant cites Rule 15 of the Civil Rules for the Southern and Eastern Districts of New York. That local rule provides that:

Whenever a procedural question arises which is not covered by the provisions of any statute of the United States, or of the Rules of Civil Procedure, or of the Rules of the United States District Courts for the Eastern and Southern Districts of New York, it shall be determined, if possible, by the parallels or analogies furnished by such statutes and rules. If, however, no such parallels or analogies exist, then the procedure heretofore prevailing in courts of equity of the United States shall be applied, or in default thereof, in the discretion

quashing and vacating a subpoena directing him to appear and testify on behalf of the United States in the above-captioned proceeding.

Although the motion papers fail to isolate the grounds for the requested order, the three supporting affidavits and the accompanying memorandum of law reveal the essential argument: Mr. Withington claims that he is being summoned to testify not as an individual with first-hand knowledge of the facts of this litigation but rather as an expert witness and that, as an unwilling expert, he may not be compelled to testify. Mr. Withington asserts that the information which he understands the Justice Department will seek to elicit from him at trial is proprietary and should be protected from involuntary revelation. Additionally, while movant's memorandum of law fails even to mention this assertion, it is argued in the accompanying affidavits that certain unspecified contractual relationships that exist between Mr. Withington's current employer, Arthur D. Little, Inc. (hereinafter ADL) and IBM would create a conflict of interest should Mr. Withington be compelled to testify on behalf of the plaintiff.

The Department of Justice does not dispute that it intends to call Mr. Withington to testify as an expert. It contends, however, that this court has the power to compel Mr. Withington to testify on plaintiff's behalf and that such power should be exercised since "Mr. Withington's knowledge and expertise in the [electronic data processing] industry would provide relevant information on the issues in this action." Memorandum in Opposition to Motion to Quash and Vacate the Subpoena Served upon Frederic G. Withington, at 4. For the reasons set forth below, the court has determined that the instant motion must be denied.

■ The law to which this court must adhere does not support Mr. Withington's central contention that an unwilling expert may not be compelled to testify. In *Carter-Wallace, Inc. v. Otte,* 474 F.2d 529 (2d Cir. 1972), *cert. denied,* 412 U.S. 929, 93 S.Ct. 2753, 37 L. Ed.2d 156 (1973), uncited by movant, the Second Circuit was confronted with the argument that the requirement of unavailability prevented the receipt of the prior testimony of certain expert witnesses notwithstanding the fact that the witnesses lived beyond the reach of the court's subpoena power. It was claimed that the rule that a court's lack of power to compel attendance at trial is sufficient proof of unavailability is inapplicable with respect to expert witnesses whose "opinions could under no circumstances be obtained through court process." 474 F.2d at 536. In disposing of this somewhat curious argument, Judge Friendly, writing for the majority, conclusively answered the question raised by Mr. Withington's motion:

Carter-Wallace's reliance on the court's alleged lack of power to compel expert testimony is misplaced. The weight of authority holds that, although it is not the usual practice, a court does have the power to subpoena an expert witness and, though it cannot require him to conduct any examinations or experiments to prepare himself for trial, it can require him to

---

of the court, the procedure which shall then prevail in the Supreme Court or the Surrogates Court as the case may be of the State of New York may be applied.

This court believes, however, that reliance on the N.Y.C.P.L.R. is unnecessary. Since this court has the inherent power to vacate the subpoena served on Mr. Withington and issued from this court, *see* 5A *J. Moore, Federal Practice* ¶ 45.05[2] at 45-37 (2d ed. 1975), it would seem that a motion to quash the subpoena may be made. In any event,

Local Civil Rule 15 expresses a clear preference for reliance on parallels or analogies in the Federal Rules before reference is made to New York procedure. The abundantly clear provisions of Fed.R.Civ.P. 45 with regard to a motion to quash a subpoena duces tecum provide the compelling analogy envisioned by Local Civil Rule 15 and permit the procedure invoked by Mr. Withington without reference to section 2304 of the N.Y. C.P.L.R.

state whatever opinions he may have previously formed. *Boynton v. R. J. Reynolds Tobacco Co.*, 36 F.Supp. 593 (D.Mass.1941); *United States v. 284, 392 Square Feet of Floor Space*, 203 F.Supp. 75 (E.D.N.Y.1962) (dictum); see 4 Moore, Federal Practice ¶ 26.-66[1], at 26–469 (1972); 8 Wigmore [Evidence] § 2203(2)(c) [3d ed. 1940].

*Id.* To this rejection by the Court of Appeals of Mr. Withington's essential argument, it need only be added that an even stronger basis may be said to exist in the case at bar for recognizing the court's power to compel expert testimony than existed in *Carter-Wallace*. This is not an attempt by a litigant in a private controversy to support its case through the assistance of an unwilling expert. Instead, here is involved an attempt by the United States to summon a member of the public to testify in a major government antitrust case, a case which, by definition, greatly affects the commonweal. *See Pennsylvania Co. for Insurances on Lives and Granting Annuities v. City of Phila.*, 262 Pa. 439, 105 A. 630 (1918).

Ignoring *Carter-Wallace*, Mr. Withington cites *People ex rel. Kraushaar Bros. & Co. v. Thorpe*, 296 N.Y. 223, 72 N.E.2d 165 (1947) for the proposition that in New York an expert cannot be subpoenaed to testify against his will.

It is then asserted that under Rule 43(a) of the Federal Rules of Civil Procedure, *Kraushaar* should control the disposition of this motion.[2] This court cannot agree. The Second Circuit's opinion in *Carter-Wallace*, issued twenty-five years after *Kraushaar* and concerning an appeal from a trial in the Eastern District of New York, erases all doubts that this court, sitting in New York, has the power to compel an expert to testify. Further consideration of *Kraushaar* and other New York cases relying upon it is, therefore, unnecessary.

During the pendency of this motion, the Federal Rules of Evidence became effective. A careful examination of those rules, however, reveals that they leave unaltered the conclusion, compelled by *Carter-Wallace*, that this court has the authority to compel Mr. Withington to comply with the subpoena.

 It is true that *Carter-Wallace* did not address an alleged conflict of interest which might result from compelling an expert witness to testify. However, Mr. Withington's reliance on this argument to thwart plaintiff's subpoena is misplaced. This argument, not even mentioned in the "supporting" memorandum of law,[3] is cast in the affidavits in vague and conclusory terms. Thus Mr. Withington claims that "aside from the *normal conflict of interest*" which

2. With the adoption of the Federal Rules of Evidence in 1975, subdivisions (b) and (c) of Rule 43 were abrogated and subdivision (a) was substantially amended. The effective date of those amendments occurred during the pendency of this motion. However, in light of this court's determination, as indicated in the text, *infra*, that the new Rules of Evidence do not alter the conclusion that this court has the power to compel Mr. Withington to testify, the court has not reached the question of whether Rule 43(a) or the new Rules of Evidence, in favor of which Rule 43 was amended, "control" the disposition of this motion.

3. Although cited for a distinctly different proposition of law than one involving an alleged conflict of interest, Mr. Withington does refer in his memorandum to *Boynton v.*

*R. J. Reynolds Tobacco Co.*, 36 F.Supp. 593 (D.Mass.1941) wherein, after determining that it had the authority to compel an adverse party's expert to submit to a deposition, the court briefly addressed the possibility that the expert would be placed in a conflict of interest. Before relying on the language in that case, however, it must be noted that *Boynton*, like many of the cases cited by Mr. Withington in his memorandum of law, concerned an attempt to obtain discovery from an opponent's expert. As Professor Moore indicates, such cases are distinguishable from those concerning attempts to subpoena an expert to testify at trial. 4 *J. Moore, Federal Practice* ¶ 26.66[1] at 26–470 (2d ed. 1975). In any event, the court in *Boynton* explicitly indicated that its decision denying the deposition of the expert was simply an exercise of its discretion.

would exist if he was compelled to testify since "IBM has been a client of ADL for many years," such testimony would be a "conflict of interest with respect to [his] obligations to [his] employer" since Mr. Withington has been "advised that ADL, in *some capacity*, is actually participating in [IBM's defense]." Withington affidavit at 3 (emphasis supplied). To this statement by Mr. Withington, counsel for ADL adds in his affidavit that:

IBM is presently a client of ADL, and ADL is performing services for IBM under a number of contracts. Therefore, ADL management does not believe it to be proper or appropriate for Mr. Withington to appear as an expert witness on behalf of the Justice Department in this proceeding.

Bradford affidavit at 2 ¶ 4.

Apart from the overgeneralized and indefinite nature of Mr. Withington's assertions concerning unspecified contracts and undefined relationships, the court is simply not persuaded that Mr. Withington's argument relating to an alleged conflict of interest is a sufficient ground for denying the court access to his testimony, the precise subject-matter of which is not even yet known. Nor, it appears, would Professor Moore accept such an argument. In a section devoted to pre-trial discovery from *adverse party's experts*, Professor Moore restates the "general American rule" that an expert may be compelled to testify at the trial on matters of expert opinion. 4 *J. Moore, Federal Practice* ¶ 26.66[1] at 26–469 (2d ed. 1975).

All that is being required of Mr. Withington, who, as the above-quoted statements suggest, is not personally involved in IBM's defense, is that he perform his duty to testify, impartially, in a case of national significance. That his employer may have enjoyed certain business relationships with defendant now or in the past should not insulate him from this obligation. Were this court to conclude otherwise, a party to a lawsuit involving highly specialized tech-

nology could, by the employment of experts, effectively insulate itself from the highly probative testimony that those experts might provide. Mr. Withington may not be the only qualified expert in the field of computers. Nevertheless, the size, complexity and significance of this case create a need to obtain all the relevant testimony that the parties, through their witnesses, can provide. In recognition of this need, the court has permitted the parties to engage in a vast, perhaps unprecedented, discovery program imposing burdens on hundreds of non-parties. Additionally, scores of individuals will be summoned to testify at the trial, in many cases at a considerable sacrifice of time and expense to the witness and the company he may represent. That the court has permitted the parties to impose these burdens reflects the court's firm belief that as the public will benefit from a just and expeditious resolution of this case, so must the public share in the burdens that such a resolution involves. This same belief constrains the court to conclude that the burden Mr. Withington is being asked to bear should be upheld. Motion denied.